UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KENNETH MICHAEL SZEFLER,

                              Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

**Decision and Order**

19-CV-143-HBS
(Consent)

## I.    INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 5, cited hereafter as "Tr."), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 7, 8. Plaintiff Kenneth Michael Szefler challenges the final decision of the Commissioner of Social Security (the "Commissioner") that he is not entitled to Disability Insurance Benefits under Title II of the Social Security Act. The Court has deemed the motions submitted on the papers under Rule 78(b).

## II.    LEGAL STANDARD

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether [the Commissioner] applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and

citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.' It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and editorial marks and citations omitted); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner

merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d) (2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to determine the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

### III. DISCUSSION

Szefler argues that, in crafting the RFC, the ALJ erred by relying on the opinion of non-examining medical expert Chukwuemeka Efobi, M.D., over that of his treating physician,

4

Balvinder S. Kang, M.D.  For the reasons discussed below, the Court disagrees.

By way of background, Szefler applied for Title II benefits based on his psychiatric conditions, which include bipolar disorder and depression.  Tr. 75.  He alleged an onset date of January 1, 2007.  Because his date last insured was December 31, 2010, the question before the ALJ was whether, between 2007 and 2010, Szefler's conditions prevented him from obtaining employment.  *See Schupp v. Barnhart*, No. 02-CV-103, 2004 WL 1660579, at *2 n.2 (D. Conn. Mar. 12, 2004) (explaining that the date last insured "refers to the date before which the plaintiff must prove disability in order to be eligible for disability benefits").

The ALJ answered that question in the negative, primarily relying on the testimony of Dr. Efobi.  Tr. 460.  Dr. Efobi, a board certified psychiatrist, testified at the hearing before the ALJ.  *See* Tr. 484.  Dr. Efobi did not examine Szefler but did review his medical records.  *Id.*  In Dr. Efobi's view, Szefler had one severe impairment: bipolar disorder with psychotic features.  Tr. 486.  He did not believe Szefler's disorder precluded work until after April 2014, when Szefler was hospitalized during a manic episode.  Tr. 486-87; *see also* Tr. 813-15.  Dr. Efobi disagreed with the opinion of Dr. Kang, who stated that Szefler had been unable to work since 2008, because the contemporaneous treatment notes did not support the level of severity Dr. Kang identified.  *See* Tr. 498, 714.  The ALJ gave "great weight" to Dr. Efobi's opinion, finding it consistent with the medical record.  Tr. 460.

By contrast, the ALJ discounted three medical opinions written by Dr. Kang.  In August 2013, Dr. Kang opined that for "the last 4 years [Szefler] has not been able to hold any

5

meaningful employment due to lack of concentration, forgetfulness, depression, and hypomania." Tr. 412. The ALJ discounted this opinion because it was a "general statement" that lacked "any specific functional limitations" and because it was inconsistent with Dr. Kang's own treatment notes. Tr. 461.

In November 2015, Dr. Kang completed an RFC questionnaire. Tr. 9-14. He opined that by 2010, Szefler's psychiatric conditions would have, among other things, caused him to be off task more than 30% of the workday and absent more than four days per month. *Id.* The ALJ found these substantial limitations inconsistent with Dr. Kang's treatment notes and the limited treatment he provided during that time period. Tr. 461.

In September 2017, Dr. Kang completed a medical source statement. Tr. 713-16. He stated that Szefler's conditions caused marked limitations in his ability to interact with coworkers and supervisors, deal with changes in work setting, and engage in complex tasks. Tr. 713-14. The ALJ found these limitations inconsistent with the record evidence and Dr. Kang's treatment notes. Tr. 461.

Ultimately, the ALJ concluded that as of the date last insured, Szefler had severe impairments of bipolar disorder, depression, ADHD, and degenerative joint disease, but that he could still perform a reduced range of medium work. Tr. 456, 458. The ALJ further concluded that, in light of that RFC determination, Szefler could have obtained employment, and therefore he was not disabled on or before the date last insured. Tr. 463-64.

On appeal, Szefler's primary argument is that the ALJ erroneously found Dr. Kang's

6

opinions inconsistent with the treatment notes and the other contemporaneous medical evidence. Because of that alleged error, Szefler argues that the ALJ failed to provide good reasons for rejecting Dr. Kang's opinions and therefore violated the treating physician rule. The Court is not persuaded.

>The treating physician rule provides:
>
>[A treating physician's opinion] is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence. Additionally, the Commissioner [must] always give good reasons for the weight given to a treating source opinion. While an ALJ may give less than controlling weight to a treating physician's opinion, he or she must comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion. Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific.

*McGee v. Comm'r*, No. 18-CV-448, 2019 WL 3450964, at *4 (W.D.N.Y. July 31, 2019) (internal quotation marks and citations omitted). Good reasons for rejecting a treating physician's opinion include its inconsistency with the record as a whole and the absence of supporting clinical findings. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion . . . the more weight we will give that medical opinion."); *id.* § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *accord Gibbons v. Comm'r of Soc. Sec.*, No. 18-CV-311, 2019 WL 4199786, at *6 (W.D.N.Y. Sept. 5, 2019). Thus, the ALJ could reasonably reject Dr. Kang's opinions if they were inconsistent with the record or unsupported by his own findings.

>Szefler has a long history of psychiatric treatment. Records from 2006 indicate that

7

Szefler was struggling with depression, an inability to concentrate, and lack of energy. *See* Tr. 255, 271-72. He was prescribed various medications and continued to work. *See* Tr. 268. By 2008, Szefler was having employment difficulties, but he attributed this to the financial crisis rather than his medical conditions. Tr. 284, 285. Indeed, he reported stability and improvement in his bipolar and attention deficit disorders during that time, *see* Tr. 283-88, and was only meeting with his psychiatrist quarterly. *See* Tr. 287.

In February 2009, Szefler began treating with Dr. Kang. Tr. 760. Dr. Kang increased Szefler's medications in response to his complaints of depression and mood swings. *Id.* Those medications were reduced a few months later when Szefler reported improvements to his mental health. Tr. 759. This pattern—psychiatric symptoms followed by an increase in medication followed by improvement—persisted over the next year. *See* Tr. 756, 757.

Still, as of December 14, 2010, Szefler reported that he was doing "o.k." and was working full time. Tr. 755. In February 2011, Szefler reported that he was filing for bankruptcy due to the economy and poor financial decisions. Tr. 753. In May 2011, Szefler reported feeling relaxed and not depressed. Tr. 752.

Based on this evidence, the ALJ reasonably read the record to show that Szefler's symptoms were not disabling between 2007 and 2010, but instead that treatment "was successful in reducing his symptoms" and that he continued to retain the capacity to work. Tr. 460. As a result, the ALJ could reasonably be skeptical of Dr. Kang's claims that Szefler had marked limitations in various work capacities and would be off-task more than 30% of a

workday and would be absent from work for more than four days per month. In other words, the ALJ's finding—that the contemporaneous medical records did not reflect the level of impairment that Dr. Kang identified—was reasonable and constituted the requisite good reasons to reject Dr. Kang's opinions.

Szefler counters that Dr. Kang's opinions are consistent with this record because they both reflect the "instability in [Szefler's] condition." Dkt. No. 7-1 at 23. While it may be true that the severity of Szefler's depression and anxiety ebbed and flowed during the relevant timeframe, the treatment Szefler received was fairly routine, consisting of occasional appointments and the routine recalibration of his medications in response to changing symptoms. *See* Tr. 460. And regardless, whatever may be said about the alleged "instability" of his conditions, Szefler continued to work throughout this period, stopping "for reasons not related to the allegedly disabling impairments." *Id.*

Ultimately, even if a different inference could be drawn from this record, "[i]t is the function of the [ALJ], not the courts, to resolve evidentiary conflicts." *Kane v. Astrue*, 942 F. Supp. 2d 301, 305 (E.D.N.Y. 2013) (internal quotation marks omitted). Because the ALJ reasonably found Dr. Kang's opinions to be inconsistent with his treatment notes and other medical evidence, she reasonably rejected the opinions under the treating physician rule.

Szefler next contends that, for several reasons, the ALJ erroneously relied on Dr. Efobi's opinion to construct the RFC.

First, Szefler asserts that, as a general matter, it is unreasonable for an ALJ to favor a

9

non-examining physician's opinion over that of a treating physician, particularly as to psychiatric conditions. *See* Dkt. No. 7-1 at 20-21. To be sure, a treating source is usually better positioned to assess the nature and extent of a claimant's psychiatric condition, *see, e.g.*, *Courtney v. Comm'r of Soc. Sec.*, No. 17-CV-897, 2019 WL 2281226, at *3 (W.D.N.Y. May 29, 2019), but this is not an inflexible rule. *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (summary order) ("[T]he regulations . . . permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record."); *Velazquez v. Astrue*, No. 06-CV-343, 2008 WL 4911765, at *1-2 (W.D.N.Y. Nov. 13, 2008) (concluding "it was error for the ALJ to rely upon the opinion of . . . a non-treating, non-examining doctor to the exclusion of the medical evidence . . . submitted by treating physicians," but rejecting "any bright-line rule that the decision of a non-examining physician may never be relied on by an ALJ" (emphasis omitted)). Where, as here, the treating physician's opinion conflicts with his own notes or other record evidence, an ALJ may rely on the opinion of a non-examining source. *See Camille*, 652 F. App'x at 27-28 (affirming, in psychiatric context, ALJ's decision to favor non-examining source's opinion over treating source's opinion, where the latter opinion conflicted with treatment notes and medical evidence).

Second, Szefler contends that even Dr. Efobi admitted his opinion was "less reliable than Dr. Kang's opinion." Dkt. No. 7-1 at 21. This is a misinterpretation of the relevant testimony. Dr. Efobi acknowledged that a personal examination of a patient is generally "more valuable" than a mere review of the patient's records, Tr. 496, but he maintained that the record "does

not support the level of severity" that Dr. Kang identified. Tr. 498. Dr. Efobi's testimony is not a basis for remand.

Third, Szefler asserts that one of the ALJ's explanations for affording different weight to Dr. Efobi and Dr. Kang was "internally inconsistent," in that both opinions were completed years after the date late insured, but the ALJ only discounted Dr. Kang's opinion on that basis. *See* Dkt. No. 7-1 at 24-25. Again, the Court finds this to be a misinterpretation. The ALJ discounted Dr. Kang's opinions because they were "completed years after the date last insured *without sufficient support for marked functional limitations*," whereas Dr. Efobi's opinion, while issued in 2018, was grounded in and supported by his "review of the records dated prior to the date last insured." Tr. 460-61 (emphasis added). As the Court reads the ALJ's decision, the point is not merely that Dr. Kang's opinions came years after the date last insured, but that they are inconsistent with and ostensibly disconnected from the medical evidence generated during the relevant timeframe.

Fourth, Szefler argues that Dr. Efobi's opinion is inconsistent with the record evidence. *See* Dkt. No. 9 at 4. However, most of the evidence Szefler cites relates to treatment occurring months or years after the date last insured. *See id.* In any case, the mere fact that there is some evidence in the record to support Szefler's claimed limitations is not enough to warrant remand. *See Pomales v. Comm'r of Soc. Sec.*, No. 18-CV-851, 2019 WL 6522854, at *6 (W.D.N.Y. Dec. 4, 2019) ("Under the substantial evidence standard of review, it is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or *to argue that evidence in the record could*

11

*support his position.*" (internal quotation marks and brackets omitted)). As discussed above, the ALJ reasonably read the record as reflecting that, prior to the date last insured, Szefler had minor but not wholly disabling limitations due to his psychiatric conditions. Dr. Efobi's opinion supports and is consistent with that reading. The Court may not upset the ALJ's determination simply because there is contrary evidence. *See Muro v. Berryhill*, 412 F. Supp. 3d 254, 261 (E.D.N.Y. 2019) ("[T]he findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive, and therefore, the relevant question is not whether there is substantial evidence supporting the plaintiff's view; instead, the Court must decide whether substantial evidence supports the ALJ's decision." (internal quotation marks, emphasis, citations, and brackets omitted)).

In sum, Szefler articulates no valid grounds for remanding this case.

## IV.    CONCLUSION

For the reasons discussed herein, the Court grants the Commissioner's motion (Dkt. No. 8) and denies Szefler's cross-motion (Dkt. No. 7). The Clerk of the Court is directed to enter judgment and close the case.

SO ORDERED.

*/s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: September 14, 2020